697 So.2d 288 (1997)
STATE of Louisiana
v.
Nathan L. JOHNSON, Jr.
No. 96 KA 1834.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*289 Bernard E. Boudreaux, Jr., District Attorney, Thomas C. Senette, Jr., Assistant District Attorney, Franklin, for Plaintiff/Appellee State.
M. Craig Colwart, Indigent Defender Board, Franklin, for Defendant/Appellant Nathan L. Johnson, Jr.
Before GONZALES and KUHN, JJ., and CHIASSON[1], J. Pro Tem.
KUHN, Judge.
The defendant, Nathan Johnson, Jr., originally was charged by grand jury indictment with first degree murder and aggravated rape, violations of La. R.S. 14:30 and 42, respectively. Subsequently, the first degree murder charge was amended to second degree murder, a violation of La. R.S. 14:30.1.[2] Defendant pled not guilty and, after trial by jury on only the second degree murder charge, was found guilty as charged.[3] Defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, with credit for time served. He has appealed, alleging as his only assignment of error,[4] that the trial court erred in denying *290 his motion for a mistrial based upon improper questioning regarding other crimes evidence.

FACTS
Defendant was the father of the two year old victim, Felicia Johnson. On the night of November 14-15, 1991, the victim received injuries which resulted in her death. In the early morning hours of November 15th, defendant borrowed his father's car in order to take the victim to Lakewood Hospital in Morgan City, Louisiana. On the way to the hospital, defendant met his wife and the mother of the victim, Barbara Johnson, who had been outside talking to a neighbor. When they arrived at Lakewood Hospital, the victim was unconscious, not breathing, and bleeding from the nose. She was later transferred to the pediatric trauma unit Ochsner's Hospital in New Orleans, Louisiana, where she died later that day. A subsequent autopsy revealed a large amount of blood in the victim's stomach and one of her lungs, indicating that she died from massive hemorrhaging due to one or more blows to the abdomen. The victim also had tears in the vagina and rectum indicating she had been penetrated anally and vaginally.
The defendant initially claimed that the victim apparently received her injuries by falling out of the bed, but he soon became a suspect in the case when the authorities observed that the bed was only about two feet from the floor and when they learned that defendant was the only adult in the house with the victim and her brother, Emon.[5] Defendant gave two taped statements to the Morgan City Police. In the first taped statement on November 16th, defendant denied inflicting physical injuries or sexual abuse upon the victim. In another taped statement on November 18th, defendant admitted striking the victim, although he claimed it was an accident. He tried to explain that he kicked or struck the victim during a karate or kung fu workout. Yet, defendant again denied any sexual abuse of the victim in this statement. However, in an oral statement made to Detective Michael Banks at the Morgan City Police Department on November 19th, the defendant claimed that he did not "totally rape" the victim, but he did not elaborate on this statement.

ASSIGNMENT OF ERROR
In this assignment of error, defendant contends that the trial court erred in denying his motion for a mistrial based upon improper questioning regarding other crimes evidence.
During the prosecutor's direct examination of Mrs. Johnson, the following colloquy occurred regarding her marital relationship:
Q I want to call your attention back to 1991, Miss. (sic) Johnson. Would you tell the jury what your relationship was with your husband before Felicia's death?
A Um, he use to beat me all the time, jump on me, talk to me any kind of way.
Q Were ya'll living together?
A Yes.
Q Where did ya'll live?
A Um Eagle Street. 604 Eagle.
Q And was that a house or an apartment?
A Apartment. Duplex.
Q Okay, is that where ya'll lived at the time that Felicia got killed?
A Yes, sir.
Q What about the personal relationship between you and your husband at that time? Were ya'll sleeping together?
A No.
Q Were ya'll having sexual relations
A No.
Q at that time. How long when uh Felicia diedhow long had it been since ya'll had slept together, had sexual relations with each other?
A Um October.
Q When?
A October 25th.
Q Was that the last time?

*291 A Yes sir.
Q And Felicia was killed on November
A November 15th.
Q Did ya'll sleep in the same bedroom?
A No.
(Underlining added).
Thereafter, at the conclusion of the prosecutor's direct examination, the following colloquy occurred:
Q And you told the jury a while ago that Nathan would hit you, right?
A Yes.
THE COURT:
Jus (sic) a minute, ma'am. Uh, go to another area. This area is not relevant.
[PROSECUTOR]:
Okay, Your Honor.
[DEFENSE COUNSEL]:
Can I make my motion at a later dateat a later time outside the presence of the jury?
THE COURT:
Yes, sir.
[PROSECUTOR]:
Q How long had you and uhand Nathan not shared the same bedroom as of the time this happened?
A Since October.
Q Since October. We tender Miss. (sic) Johnson.
After the lunch recess, out of the jury's presence, defense counsel requested a mistrial based on Mrs. Johnson's reference to other crimes. Defense counsel argued that the question was deliberately asked by the prosecutor and that an admonition would not be sufficient to cure any prejudicial effect. The prosecutor responded that no objection was made when, earlier during direct examination, he questioned Mrs. Johnson about her marital relationship. The prosecutor also stated that his question was intended to further explore the marital relationship, but not to elicit other crimes evidence. The prosecutor concluded that, since the trial court had sustained the objection, an admonition would suffice rather than a mistrial. The trial court also concluded that the question and response did not mandate a mistrial and that an admonition would be sufficient.
Immediately prior to closing arguments, the trial court admonished the jury as follows:
THE COURT:
Ladies and gentlemen, before we close the evidence phase of the case I have an announcement to make to you. During the testimony of Mrs. Barbara Johnson, [the prosecutor] asked a question of Mrs. Johnson to which [defense counsel] objected. The objection was sustained by the Court. However, before the objection was sustained Mrs. Johnson had given an answer to the question. You are to disregard the answer to the question, and the Court is going to order that response stricken from the record and you are not to consider that statement in youras evidence in this case. Okay.
This ends and concludes the evidence phase of the case, we now move to the uh closing arguments of the parties.
La.Code Crim. P. art. 770(2) provides for a mandatory mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Dietrich, 567 So.2d 623, 634 (La.App. 1st Cir.), writ denied, 568 So.2d 1079 (La.1990). However, such a remark by a witness does not require a mistrial if the court is satisfied that an admonition to the jury is sufficient to assure the defendant of a fair trial. La.Code Crim. P. art. 771; State v. Odds, 430 So.2d 1269, 1272 (La.App. 1st Cir.1983).
La.Code Crim. P. art. 771 provides for a discretionary mistrial, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it *292 might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial under the provisions of La.Code Crim. P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for defendant to obtain a fair trial. State v. Thompson, 597 So.2d 43, 46 (La.App. 1st Cir.), writ denied, 600 So.2d 661 (La.1992). The jurisprudence has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the State and would mandate a mistrial. However, unsolicited and unresponsive testimony is not chargeable against the State to provide a ground for mandatory reversal of a conviction. State v. Thompson, 597 So.2d at 46.
Although the record does not reflect defense counsel's objection to the question, the trial court clearly interrupted the proceeding and implicitly sustained the objection by informing the prosecutor to move on to another area. In our view, the response was a reference to other crimes evidence, i.e., that defendant had beaten his wife during their marriage. While the prosecutor argued at trial (as the State now argues in brief) that the question was designed only to further explore the marital relationship and not to elicit other crimes evidence, to accept such an assertion we must conclude it certainly was a very poorly worded question. Nevertheless, even if we were to conclude that the prosecutor's question was a reference to other crimes evidence (the previous testimony by Mrs. Johnson that the defendant had beaten her) which would ordinarily mandate a mistrial under Article 770(2), for the following reasons we find that the trial court's decision to admonish the jury was sufficient to cure any prejudice in this situation.
Both of defendant's taped statements were introduced into evidence. These statements contain references to defendant beating and/or physically abusing his wife and son. Furthermore, in defendant's second taped statement, he confessed to inflicting the victim's fatal injuries. He also made the extremely inculpatory oral statement to Detective Banks that he did not "totally" rape the victim. Moreover, as noted above, when the prosecutor initially questioned Mrs. Johnson about the marital relationship, she stated, without objection from defense counsel, that she had been physically and verbally abused by defendant. Under these circumstances, we find it difficult to conclude that the trial court erred in deciding to admonish the jury rather than granting a mistrial.
Even assuming, arguendo, that the trial court erred in failing to grant a mistrial, we nevertheless find any such error to be harmless beyond a reasonable doubt. La. Code Crim. P. art. 921. In Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), the United States Supreme Court clarified the harmless error analysis as follows: "The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." In Sullivan, the Supreme Court was discussing the harmless error rule applicable to federal constitutional errors. However, the Louisiana Supreme Court has apparently adopted this Sullivan harmless error analysis for violations of La.Code Crim. P. art. 770 assuming, of course, that the particular violation is subject to a harmless error analysis. See State v. Bourque, 622 So.2d 198, 241 n. 20 (La.1993). On rare occasions in cases which presented exceptional or unusual circumstances, this Court has determined that a harmless error analysis is applicable to situations arising under Article 770(2). See State v. Glynn, 94-0332, pp. 12-14 (La.App. 1st Cir. 4/7/95); 653 So.2d 1288, 1299-1301, writ denied, 95-1153 (La.10/6/95); 661 So.2d 464; State v. Trosclair, 584 So.2d 270, 277-279 *293 (La.App. 1st Cir.), writ denied, 585 So.2d 575 (La.1991); State v. Hall, 558 So.2d 1186, 1190-1191 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990).
In the instant case, defendant confessed that he delivered the blow that caused his daughter's death, stated he "did not totally rape [his] daughter," and admitted in his taped statements that he physically abused his wife and son. Prior to defense counsel's objection, Mrs. Johnson had earlier testified without objection regarding physical and verbal abuse during the marriage. Based on these factual circumstances, we find defendant could not possibly have been prejudiced by Mrs. Johnson's affirmative response to the prosecutor's second question regarding physical abuse in the marriage. The guilty verdict rendered in this trial was surely not attributable to any such error.
Considering all of the above, we find no indication that defendant was unable to obtain a fair trial because of this response. Accordingly, we find no abuse of discretion in the trial court's ruling denying defendant's motion for a mistrial.
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note two patent errors in connection with the indictment. First, we note that the charges of first degree murder and aggravated rape were improperly joined in the indictment. While both required a jury of twelve, only ten jurors needed to concur for an aggravated rape verdict, while a first degree murder verdict was required to be unanimous. See La.Code Crim. P. arts. 493 and 782 A; La. R.S. 14:30 C and 42 C. This misjoinder was cured when Count 1 was amended to second degree murder. Furthermore, the defendant was not tried on the aggravated rape charge. Second, the court minutes do not indicate that the defendant was re-arraigned after the first degree murder charge was amended to second degree murder. Nevertheless, the defendant does not allege, nor do we find, any prejudice. In any event, failure to re-arraign the defendant was waived, since he did not object before trial. La.Code Crim. P. art. 555; State v. Delatte, 504 So.2d 1067, 1068 n. 1 (La.App. 1st Cir.1987).
[3] The instant record does not reflect the status of the aggravated rape charge.
[4] The record does not contain any assignments of error. The assignment of error is taken from the defendant's brief. Although the defendant did not properly designate this assignment of error as required by La.Code Crim. P. arts. 844, 916(1) and (5), and 920, this Court is bound to review the error assigned and argued in his brief in accordance with the Supreme Court's ruling in State v. Galliano, 94-2030, 94-2280 (La.1/6/95); 648 So.2d 911. See State v. Galliano, 93-1101, p. 2 n. 1 (La.App. 1st Cir. 5/5/95); 655 So.2d 538, 540 n. 1.
[5] We have used the spelling "Emon" although the spelling "Damone" and "Demon" are also used in the record.