739 So.2d 901 (1999)
STATE of Louisiana
v.
Dana Glenn MILES.
No. 98 KA 2396.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
*902 Monisa L. Thompson, A.D.A., Baton Rouge, for State of Louisiana.
Robert E. Randolph, Baton Rouge, for Defendant-Appellant.
Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
SHORTESS, J.
Dana Glenn Miles (defendant) was charged by grand-jury indictment with second-degree murder. La. R.S. 14:30.1. He pled not guilty and, following a jury trial, was found guilty as charged. The trial court sentenced defendant to imprisonment for life at hard labor, without benefit of parole, probation, or suspension of sentence. He has now appealed, raising two assignments of error.

Facts
Carrie Miles, defendant's mother, owned a duplex in Baton Rouge. Rosalie McGee, defendant's grandmother, owned the adjacent duplex. Lynette Bell lived in one of the apartments, and defendant's brother lived in another. On March 31, 1997, defendant was staying with his brother. Derrick Tucker (the victim) was visiting Bell.
At approximately 9:00 to 9:30 p.m. that evening, while outside the duplex, defendant became involved in a verbal argument with Jason Bland and the victim. Eventually, *903 defendant went back inside his brother's apartment, and the victim returned to Bell's apartment. The victim then began beating on the common wall between the apartments, yelling that he was tired of defendant "messing with him." At some point, the victim threatened to "get" defendant and told Bland to go home to get a gun so he could shoot defendant. Bland did not leave the premises. There was conflicting testimony as to whether the victim's threats were made while he was outside or after he went inside and began beating on the wall. In any event, according to witnesses, the victim calmed down and stopped yelling.
At approximately 10:00 to 10:30 p.m., the victim left Bell's apartment with Bland. As the victim was standing in the street, defendant appeared in the doorway of his apartment, and called to the victim. The unarmed victim, who had earlier removed his shirt, approached defendant, asking what he wanted. Defendant stepped out of the doorway and shot the victim in the upper chest with a shotgun. A second shot hit the victim in the right, upper shoulder. As the victim turned around and attempted to flee in the opposite direction, defendant shot him a third time, striking him in the back of the neck. At this point, the victim fell to the ground mortally wounded. He died at the scene. The medical examiner who performed the autopsy testified each of the three wounds individually would have been fatal to the victim.

Other-Crimes Evidence
In his first assignment of error, defendant argues the trial court erred in denying his motion for mistrial, which was based on the contention that the State deliberately elicited testimony from a witness that defendant was a "drug dealer."
At trial, Jason Bland, who was present at the time of the shooting, was called as a defense witness. Because there was a pending charge against Bland for possession of cocaine with intent to distribute, the trial court advised him, prior to his testimony, of his Fifth Amendment right against self-incrimination. Bland specifically waived this right. On direct examination, defense counsel questioned Bland, among other subjects, as to whether the victim sometimes sold drugs in that area. Bland indicated the victim did. On cross-examination, the prosecutor questioned Bland as follows:
Q. The [sic] said [the victim] sold cocaine out of that area of 32nd Street?
A. Yeah, he did sell drugs.
Q. Who else sold drugs out there?
A. I sold drugs, I know.
Q. Anybody else?
A. [Defendant] sold drugs.
At this point, defense counsel objected. He did not state the basis for his objection, but merely asked to approach the bench. An unrecorded sidebar was then held between the court, defense counsel, and the prosecutor. At the conclusion of the sidebar, the trial court cautioned the prosecutor, stating, "You got the message ...." The prosecutor indicated he understood. Defense counsel stated he wished to make a general objection and to reserve the right to argue it outside the jury's presence. The court acquiesced in the request.
The prosecutor then resumed cross-examination of Bland on a different topic. At the conclusion of Bland's testimony, defense counsel moved for a mistrial on the ground the State had deliberately elicited testimony that defendant was a drug dealer. In response, the prosecutor denied there was any ill purpose behind his question to Bland. The trial court denied the motion for mistrial, without reasons. An admonition was not requested by defense counsel.
Defendant now argues the trial court erred in denying his motion for mistrial based on the prosecutor deliberately eliciting testimony from Bland that defendant was a drug dealer. He argues additionally that this error cannot be considered harmless, since the prosecutor relied on this *904 testimony in arguing during closing argument that defendant was a drug dealer who taught the victim everything.
Louisiana Code of Criminal Procedure article 770(2) provides for a mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and the remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. When such a remark is made by a witness, however, Code of Criminal Procedure article 771 provides a mistrial is not required, if the court is satisfied an admonition to the jury is sufficient to assure the defendant of a fair trial. See State v. Johnson, 96-1834, p. 6 (La.App. 1st Cir.6/20/97), 697 So.2d 288, 291. A mistrial under the provisions of Code of Criminal Procedure article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for defendant to obtain a fair trial. Johnson, 96-1834 at p. 6, 697 So.2d at 292. Nevertheless, in situations where the witness's impermissible reference to another crime was deliberately elicited by the prosecutor, the jurisprudence has held that the impermissible reference is imputable to the State and mandates a mistrial. Johnson, 96-1834 at pp. 6-7, 697 So.2d at 292.
In this case, it appears the other-crime reference at issue was deliberately elicited by the prosecutor. Before the prosecutor asked whether anyone else sold drugs in the area, Bland had already testified he and the victim did so. The prosecutor never explained the purpose of the disputed question or what evidence he could have intended to elicit other than that defendant also sold drugs in that area. Nevertheless, under the circumstances of this case, we conclude the admission of the other-crimes evidence at issue was harmless beyond a reasonable doubt, even assuming the testimony was deliberately elicited by the prosecutor.
The erroneous admission of other-crimes evidence is a trial error subject to harmless-error analysis on appeal. State v. Johnson, 94-1379, p. 15 (La.11/27/95), 664 So.2d 94, 101. The test for determining whether an error is harmless is whether the verdict actually rendered in this case "was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); Johnson, 94-1379 at 14, 664 So.2d 94 at 100.
In this case, two witnesses testified that after the verbal argument between the victim and defendant abated, defendant summoned the unarmed victim over to him and shot him three times with a shotgun. After the first shot struck the victim, he attempted to turn and flee. The third shot hit him in the back of the neck after he had turned around and was attempting to move away from defendant. No weapon was found on or near the victim's body. Moreover, at the time defendant called the victim over, the victim was in the process of leaving the area and was moving away from the apartment where defendant was standing.
Based on these circumstances, particularly the overwhelming evidence of defendant's guilt, we find defendant could not possibly have been prejudiced by Bland's response to the prosecutor's question indicating defendant sold drugs in the area, even considering that the prosecutor referred to this testimony during closing argument.[1] The guilty verdict rendered in *905 this trial surely was not attributable to any error in admitting that evidence. Considering all the above, we find no indication defendant was unable to obtain a fair trial because of the erroneous admission of the other crime evidence at issue.
Defendant also complains in brief that during cross-examination of defendant, the prosecutor again intentionally attempted to elicit evidence that defendant was a drug dealer. In response to the prosecutor's questioning, defendant denied he had ever sold or smoked cocaine. Defense counsel did not object to this questioning. On rebuttal, the State called Dennis Smith, a Baton Rouge City Police officer, who testified that, on January 16, 1997, he searched defendant and found crack cocaine in a matchbox stuck in one of defendant's socks. Smith testified that defendant admitted at that time that he smoked cocaine. Smith did not know whether defendant was ever prosecuted as a result of the January 16 incident.
Although defendant asserts in brief that a conference was held prior to Smith's testimony to discuss his pending testimony, the record does not reflect this. Moreover, defendant does not allege, nor does the record show, that defense counsel raised any objection to Smith's testimony. Initially, we note that since no contemporaneous objection was made at trial, defendant cannot raise this issue for the first time on appeal. See La.C.Cr.P. art. 841; State v. Bennett, 591 So.2d 1193, 1197 (La. App. 1st Cir.1991), writ denied, 594 So.2d 1315 (La.1992).
We also note the substance of the testimony (i.e., that defendant possessed and smoked cocaine) was cumulative of prior testimony by another witness. Bell testified that at the time defendant shot the victim, defendant was smoking monos (also known as hype), which she explained was a cocaine-laced cigarette. The trial court ruled this testimony was admissible as part of the res gestae. Defendant has not assigned error to that ruling on appeal. Accordingly, even assuming the admission of Smith's testimony was erroneous, any such error was harmless since his testimony was cumulative of Bell's previously-admitted testimony. See La.C.Cr.P. art. 921; State v. Price, 93-0625, p. 7 (La.App. 1st Cir.3/11/94), 636 So.2d 933, 938, writs denied, 94-0742 (La.6/17/94), 638 So.2d 1091, and 94-1566 (La.10/14/94), 643 So.2d 159.
This assignment of error lacks merit.

Evidence of Prior Acts
In his second assignment of error, defendant contends the trial court erred in refusing to allow the introduction of evidence of prior acts by the victim against defendant's family.
During the direct testimony of Ms. Miles, defense counsel asked about an incident that had occurred the prior day at the duplex where the shooting occurred. The prosecutor objected based on relevancy, since the incident in question occurred a day before the shooting. Defendant argued the evidence was relevant to show acts by the victim against defendant's family the day before the shooting. An unrecorded bench conference was held during which the trial court apparently sustained the objection. Defense counsel resumed questioning of Ms. Miles on another topic. Subsequently, however, defense counsel asked for reconsideration of the trial court's ruling, arguing the evidence showing the victim's intimidation and overt acts against defendant's family on the day prior to the shooting were relevant to show he was the first aggressor. The court again ruled the evidence was not relevant. The trial was then recessed for the day.
When trial resumed the next morning, defense counsel again asked the trial court *906 to reconsider its ruling, reiterating his earlier arguments. In addition, he argued the evidence was also relevant to show the victim's dangerous character. The trial court again refused to admit the testimony but allowed defense counsel to summarize for the record the substance of the excluded testimony.
According to defense counsel, the substance of the excluded testimony that he sought to elicit from Ms. Miles was as follows. On March 30, the day prior to the shooting, Ms. Miles and several family members and friends were working at the apartments and were in the process of setting up fence posts, in preparation for installing a fence around the apartments. They were confronted by the victim and several other persons, who told them they could not do that because the victim and his group used the apartments as their crack house. Defense counsel indicated he would also call two police officers, who would testify they while patrolling the area on March 30, they went by the apartments and ordered the victim off of the premises, instructing him not to return. Defense counsel further indicated Ms. Miles would also testify that after the police left, the victim returned and sat across the street at another house, looking at her and her group in a threatening and intimidating manner. Defendant was not present during this incident.
Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that at the time of the incident, the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created, in the mind of a reasonable person, a belief that he was in immediate danger of losing his life or suffering great bodily harm. See La.Code Evid. art. 404; State v. Schexnayder, 97-0729, p. 8 (La.App. 1st Cir.4/8/98), 708 So.2d 851, 855, writ denied, 98-1665 (La.10/30/98), 723 So.2d 978. Once evidence of an overt act by the victim is established, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger that would justify his conduct, and (2) to help determine who was the aggressor in the conflict. Schexnayder, 97-0729 at p. 8, 708 So.2d at 855.
Evidence of an overt act has been interpreted as "appreciable evidence" in the record relevantly tending to establish the overt act. Once the defense has introduced appreciable evidence relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and denying the accused a defense permitted him by law. Schexnayder, 97-0729 at pp. 8-9, 708 So.2d at 855.
In this case, defendant relies on his own testimony to establish the victim committed an overt act. Defendant testified that once he went back into his apartment after arguing with the victim and Bland, the victim began beating on the walls and shouting threats at him. He heard the victim tell Bland to go get his gun so the victim could shoot defendant. At the time, defendant's cousin and his girlfriend were visiting defendant. They became frightened and left when the argument briefly quieted. Defendant stated he also decided to leave but had to turn off the lights and lock up the apartment first. He testified that as he was coming out of the apartment, he heard glass breaking and retrieved a loaded shotgun from under the couch. As defendant was coming out the door he looked up and saw a blur coming along the side of his truck, which was parked in front of the apartment. He testified the blur was the victim with a "chrome gun or something in his hand." At that point, defendant started firing.
While the testimony at trial clearly indicated defendant and the victim had argued before the shooting, there was no evidence, other than defendant's testimony, that the victim did anything at the time of the *907 shooting that could be interpreted as an overt act. In fact, two eyewitnesses testified defendant called the victim over to him and the victim was merely walking toward defendant, asking what he wanted, when defendant shot him three times at close range. The victim was unarmed. No weapon was found on or near his body.
Considering the above circumstances, we find no error in the trial court's decision to exclude evidence of the incident that occurred the prior day. Defendant failed to establish an overt act by the victim that would create, in the mind of a reasonable person, a belief that he was in imminent danger of losing his life or suffering great bodily harm. Accordingly, evidence of the victim's dangerous character or prior threats was not admissible. See Schexnayder, 97-0729 at pp. 8-10, 708 So.2d at 855-56.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Incidentally, we note that defense counsel did not object to the prosecutor's statements during closing argument that referred to defendant selling drugs. Generally, the issue of the propriety of remarks made during closing arguments is not preserved for review when a defendant falls to make a timely objection to the remarks either during argument or shortly thereafter. See State v. Trosclair, 96-1171, p. 7 (La.App. 1st Cir.2/14/97), 691 So.2d 202, 206, writ denied, 97-1187 (La.10/17/97), 701 So.2d 1333; State v. Williams, 610 So.2d 991, 1004 (La.App. 1st Cir.1992), writ denied, 617 So.2d 930 (La.1993). Further, defendant did not request an admonition or make a motion for a mistrial based on these remarks. Therefore, defendant is deemed to have waived any such errors on appeal. See Trosclair, 96-1171 at p. 7, 691 So.2d at 206.