984 So.2d 97 (2008)
STATE of Louisiana
v.
Roderick L. GRIFFIN.
No. 2007 KA 0974.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
*102 Walter P. Reed, District Attorney, Covington, LA, and Kathryn W. Landry, Baton Rouge, LA, for State-Appellee.
Holli Herrle-Castillo, Marrero, LA, for Defendant-Appellant, Roderick L. Griffin.
Roderick L. Griffin, Winnfield, LA, In Proper Person Defendant-Appellant.
Before CARTER, C.J., PETTIGREW and WELCH, JJ.
*103 WELCH, J.
The defendant, Roderick L. Griffin, was charged by two separate bills of information. The defendant was charged with distribution of cocaine (bill number 413834), a violation of La. R.S. 40:967, and with possession with intent to distribute cocaine (bill number 413835), a violation of La. R.S. 40:967(A)(1)d.[1] He pled not guilty to both charges. The trial court denied the defendant's motion to suppress evidence. Following a consolidated trial by jury, the defendant was convicted as charged. The trial court sentenced the defendant to concurrent terms of imprisonment at hard labor for fifteen years on each conviction. The first two years of the sentence on the distribution of cocaine conviction were to be served without benefit of parole. Subsequently, the State filed a multiple offender bill of information seeking to have the defendant adjudicated and sentenced under La. R.S. 15:529.1. The defendant stood silent on the allegations contained in the multiple offender bill. At the conclusion of a multiple offender hearing, the defendant was adjudicated a third-felony habitual offender. The sentence previously imposed on the distribution of cocaine conviction was vacated, and the defendant was resentenced to thirty years imprisonment at hard labor, the first two years to be served without benefit of parole. The defendant orally moved for reconsideration of the sentence. The trial court denied the motion. The defendant now appeals, urging the following assignments of error by counseled and pro se briefs:
Counseled:
1. The trial court erred in failing to grant the motion to suppress the evidence for the possession with intent to distribute cocaine charge.
2. The trial court erred in allowing the State to consolidate the charges from two separate bills of information for one trial.
3. The trial court erred in failing to grant the motion to reveal the identity of the confidential informant.
4. The State failed to present sufficient evidence for distribution of cocaine, as well as possession with intent to distribute cocaine.
5. The sentence imposed was excessive.
Pro se:
The trial court erroneously allowed the State of Louisiana to use testimony that was perjured to obtain a conviction at trial.
Finding error in both the consolidation of the offenses and the denial of the motion to suppress the evidence, we reverse the defendant's convictions and habitual offender adjudication. We vacate the sentences and remand the matter to the trial court for new trials. We reverse the trial court's ruling denying the motion to suppress.

FACTS
On April 19, 2006, with the assistance of a confidential informant, Detective Fred Ohler of the St. Tammany Parish Narcotics Task Force arranged a meeting with the defendant to purchase crack cocaine. Detective Ohler agreed to meet the defendant near some mailboxes in front of the Country Club Trailer Park in Slidell, Louisiana. In an unmarked vehicle, Detective Ohler, accompanied by the confidential informant, *104 was the first to arrive at the destination. Shortly thereafter, the defendant arrived and parked behind Detective Ohler's vehicle. Detective Ohler exited his vehicle and made contact with the defendant. According to Detective Ohler, as he and the defendant shook hands, the defendant discreetly transferred a clear cellophane bag containing suspected crack cocaine. Detective Ohler asked the defendant how much the drugs would cost. When the defendant stated a price of $200.00, Detective Ohler indicated that he only had $160.00. The defendant agreed to allow Detective Ohler to pay the balance later. The transaction was captured on audio and videotape.
The substance purchased from the defendant tested positive for cocaine. On April 28, 2006, Detective Ohler secured a warrant for the defendant's arrest for distribution of cocaine.
Thereafter, on May 2, 2006, Detective Ohler was traveling in the Slidell-Pearl River area when he observed the same vehicle that the defendant had been driving during the previous drug transaction. Detective Ohler followed the vehicle. When the defendant briefly stopped at a nearby gas station, Detective Ohler was able to confirm his identity. Detective Ohler continued to follow the defendant until he stopped at another gas station. This time, once the defendant exited the vehicle, Detective Ohler approached to execute the warrant. The defendant was read his Miranda rights and placed under arrest.
Shortly thereafter, Detective Allan Schulkens of the St. Tammany Parish Sheriff's Office arrived at the scene to assist Detective Ohler. Detective Schulkens made contact with the female passenger, subsequently identified as Kari Nasiatka. Nasiatka was also arrested after illegal narcotics and drug paraphernalia were found inside her purse, which she allowed Detective Schulkens to search.
Immediately following the arrests, Detective Ohler conducted what he called an "inventory search" of the defendant's vehicle. Inside a Crown Royal bag found inside a tool case in the trunk of the vehicle, Detective Schulkens discovered a large amount, approximately 26.13 grams, of suspected crack cocaine. Detective Ohler seized the defendant's vehicle and personally drove it to the impound yard.
At trial, the defendant testified on his own behalf. He denied selling crack cocaine to Detective Ohler. The defendant did not deny that he was the individual depicted on the videotape. He admitted that he met Detective Ohler at the trailer park but claimed they only conversed, no illegal drugs were distributed. The defendant explained that he is a drug user, not a dealer. He further explained that he was high on drugs, and he had a vague recollection of the encounter.
In connection with the possession with intent to distribute charge, the defendant claimed he had no knowledge of the presence of the illegal drugs inside his vehicle. He claimed the tool case, where the drugs were found, had been on loan to a friend of his who sells drugs. He explained that he had just picked up the tool case from his friend's wife, while the friend was asleep. He claimed he never looked inside the tool case.

COUNSELED ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, the defendant argues the State failed to introduce evidence sufficient to uphold the convictions of distribution of cocaine and possession with intent to distribute cocaine.
In cases such as this one, where the defendant has raised issues on appeal *105 both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence before discussing the other issues raised on appeal. State v. Hearold, 603 So.2d 731, 734 (La.1992). The sufficiency issue must be decided first because a finding of insufficient evidence to support the guilty verdict bars the retrial of a defendant based on the constitutional protection against double jeopardy. Thus, all other issues would be rendered moot. State v. Davis, XXXX-XXXX, pp. 2-3 (La.App. 1st Cir.6/21/02), 822 So.2d 161, 163.
On the other hand, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal. Hearold, 603 So.2d at 734.
Thus, we must initially determine whether the evidence presented at the trial was sufficient to support the convictions.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. See State v. Wright, 98-0601, p. 2 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and XXXX-XXXX (La.11/17/00), 773 So.2d 732. This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984).
Distribution of cocaine
In support of his contention that the evidence is insufficient to prove distribution of cocaine, the defendant notes that the videotape introduced by the State fails to show a transfer of any kind (drugs or money). He argues that the videotape only shows him conversing with Detective Ohler. The defendant also asserts that the audiotape of the encounter fails to reveal a drug transaction. Noting the extremely poor quality of the recording, the defendant argues that, although some sporadic words can be made out, there is no evidence of a drug deal contained on the tape. Consequently, the defendant argues that the State was left with only the testimony of Detective Ohler to support the distribution offense.
*106 Under La. R.S. 40:967(A)(1), it is unlawful for any person to knowingly or intentionally distribute cocaine, a Schedule II controlled dangerous substance. For purposes of the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961 to 40:995, "distribute" is defined as "to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner." La. R.S. 40:961(14). "Deliver" and "delivery" are defined as "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." La. R.S. 40:961(10).
In the instant case, we have reviewed the audio and video tapes of the encounter between the defendant and Detective Ohler. The only clear portion of the tape is when Detective Ohler provides a verbal synopsis before and after the encounter. The portion of the tape reflecting the content of the exchange during the alleged drug transaction is highly muffled and virtually inaudible. Insofar as the videotape is concerned, the defendant is correct in his assertion that a drug deal or transaction cannot be seen. When the image of the defendant and Detective Ohler appear on the tape, the greeting handshake and alleged drug transaction had obviously already occurred. Detective Ohler testified that the greeting took place immediately after he exited the vehicle and approached the defendant. The camera recording the transaction only showed when the men later approached the passenger side of the vehicle and conversed with the confidential informant.
Consequently, we find that the tapes (audio and video) were of limited evidentiary value.
However, the jury was presented with testimony from both the defendant and Detective Ohler regarding the facts and circumstances surrounding the cocaine distribution transaction. On one hand, Detective Ohler testified that the defendant inconspicuously handed him the crack cocaine during a greeting handshake. Detective Ohler then paid the defendant $160.00 in cash with the understanding that he would remit the $40.00 balance at a later time. The defendant, on the other hand, claimed he only conversed with the officer during the meeting in question. He denied that there was ever a drug transaction. Faced with conflicting accounts of the events, the jury was forced to make a credibility determination.
It is well settled that the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. State v. Taylor, 97-2261, pp. 5-6 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932.
The guilty verdict indicates that the jury, after hearing the testimony and evaluating the credibility of the witnesses, accepted the testimony of the State's witnesses as true and rejected the hypothesis of innocence offered by the defendant. The jury apparently believed that the defendant delivered crack cocaine to Detective Ohler in exchange for the cash payment. As previously noted, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt on appeal.
Therefore, considering the foregoing, we are convinced that the evidence *107 presented at the trial of this matter, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant is guilty of distribution of cocaine. Even absent the video and audiotapes, the testimonial evidence clearly supports the jury's verdict of guilty of distribution of cocaine.
Possession with intent to distribute cocaine
The defendant contends the possession with intent to distribute conviction must fall because the State's evidence failed to exclude, as a hypothesis of innocence, the possibility that the defendant was not aware that the cocaine was inside the tool case in the trunk of his vehicle.
The crime of possession with intent to distribute cocaine is defined as follows: it shall be unlawful for any person knowingly or intentionally to "possess with intent to . . . distribute . . . a controlled dangerous substance . . . classified in Schedule II." La. R.S. 40:967(A)(1). Thus, in order to support a conviction, the State must prove beyond a reasonable doubt that the defendant knowingly possessed the drug and he intended to distribute it.
On the issue of whether the evidence sufficiently proved possession, the State is not required to show actual physical possession of the narcotics by a defendant in order to convict. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983). Constructive possession is sufficient. A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether it is in his physical possession. Id. However, the mere presence in the area where narcotics are discovered or mere association with the person who does control the drug or the area where it is located is insufficient to support a finding of constructive possession. See State v. Harris, 94-0970, p. 4 (La.12/8/94), 647 So.2d 337, 338 (per curiam).
A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. State v. Gordon, 93-1922, p. 9 (La. App. 1st Cir.11/10/94), 646 So.2d 995, 1002. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. State v. Toups, XXXX-XXXX, p. 4 (La.10/15/02), 833 So.2d 910, 913.
Guilty knowledge is an essential element of the crime of possession of cocaine. However, since knowledge is a state of mind, it need not be proven as fact, but rather, may be inferred from the circumstances. State v. Major, XXXX-XXXX, pp. 8-9 (La.12/1/04), 888 So.2d 798, 803. Herein, the defendant does not contest his possession of the cocaine. However, the defendant does contest the knowledge element of the offense.
We find that the evidence presented was sufficient to support the jury's finding that the defendant was aware of the presence of the cocaine in the vehicle and that he exercised dominion and control sufficient to constitute constructive possession. As driver and owner of the vehicle, the defendant had complete and authorized access to the trunk area where the drugs were found. Furthermore, the defendant testified that he also owned the tool case where the drugs were located. He claimed he had just received the tool case back from a friend and was unaware if its contents. He testified that he simply *108 placed the closed tool case inside the vehicle's trunk without ever opening it. Detective Schulkens, on the other hand, testified that when he opened the trunk, the tool case was already opened and the Crown Royal bag exposed. The photograph of the contents of the trunk reflects an opened case. These facts are sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant exercised ample dominion and control over the cocaine to constitute the required element of constructive possession.
Through the defendant's own testimony, the jury was made aware of the hypothesis of innocence urged by the defendant, i.e., that he was unaware of the presence of the crack cocaine in his vehicle. The guilty verdict indicates that the jury rejected this hypothesis as unreasonable. We find no error in the jury's conclusion on this issue. Based on the evidence before us, it was entirely reasonable for the jury to conclude the defendant had the requisite guilty knowledge in the commission of the offense.
As to the evidence of defendant's intent to distribute crack cocaine, it is well settled that intent to distribute may be inferred from the circumstances. Hearold, 603 So.2d at 735. Factors useful in determining whether the State's circumstantial evidence is sufficient to prove intent to distribute include: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. State v. House, 325 So.2d 222, 225 (La. 1975).
In the absence of circumstances from which an intent to distribute may be inferred, mere possession of illegal drugs is not evidence of intent to distribute unless the quantity is so large that no other inference is reasonable. See State v. Greenway, 422 So.2d 1146, 1148 (La.1982).
Analyzing the facts of the instant case and applying the House factors, we conclude that the jury's finding of specific intent to distribute cocaine was sufficiently supported by the evidence presented. The State proved through expert testimony that the large amount of crack cocaine found in the defendant's possession was inconsistent with personal use. Furthermore, we note that on appeal, the defendant does not attack the sufficiency of the evidence of intent to distribute.
Thus, viewing the totality of the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that the defendant possessed the crack cocaine found in his trunk and he did so with the specific intent to distribute it. All of the essential elements of the crime of possession of cocaine with intent to distribute were proven.
This assignment lacks merit.
Accordingly, while the defendant is entitled to a reversal of his convictions because of other trial errors, as discussed hereafter, he is not entitled to an acquittal based on the insufficiency of the overall evidence of the offenses.

COUNSELED ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant argues the trial court erred in failing to grant his motion to suppress the *109 evidence introduced in connection with the possession with intent to distribute cocaine conviction. Specifically, he asserts that the evidence seized from his vehicle was obtained as a result of an illegal and warrantless search that cannot be justified under the inventory search exception. In response, the State asserts the search in question was valid under the search incident to a lawful arrest exception and/or the inventory search exception to the warrant requirement.
The United States and Louisiana Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. 4; La. Const. art. I, § 5. A search conducted without a warrant is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Both the United States Supreme Court and the Louisiana Supreme Court have recognized a true inventory search to be an exception to the warrant requirement. State v. Brumfield, 560 So.2d 534, 536 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La. 1990) (and cases cited therein).
The justification for an inventory search is ostensibly to protect the occupant against loss of his property or to protect the law enforcement agency against the occupant's claim for failure to guard against such a loss. A valid inventory search is conducted not on probable cause to secure evidence, but merely to inventory the vehicle's contents in order to safeguard them, as an incident to the vehicle's necessarily being taken into lawful police custody. Id.
Because the inventory search is a narrow exception to the requirement of a warrant and the requirement of probable cause, it must be strictly limited to these practical purposes for which it is justified. State v. Killcrease, 379 So.2d 737, 739 (La.1980). An inventory search may not be used as a subterfuge for rummaging through the arrestee's vehicle without a warrant for the primary purpose of seizing evidence. Brumfield, 560 So.2d at 536. To fall within the inventory exception, however, the State must prove that the impoundment of the defendant's vehicle was necessary and that the inventory of the vehicle's contents was necessary and reasonable in its scope. State v. Crosby, 403 So.2d 1217, 1219 (La.1981). Inventory searches that take place at the place of arrest rather than at the place of impoundment are suspect and have frequently been found to be a subterfuge for a search for evidence. See Killcrease, 379 So.2d at 739. Factors that are significant in determining whether a so-called "inventory search" was a subterfuge for a warrantless search without probable cause are:
(1) the vehicle could not have remained safely at or near the place it was stopped; (2) the search was not conducted in the field; (3) the tow truck was called before the search commenced; (4) formal impoundment procedures were followed; (5) the vehicle operator was asked if he consented to a search, if the car contained valuables, or if he would consent to the agency's failure to afford him the protection of an inventory search; (6) arrangements were made for someone designated by the operator to take possession or protective custody of the vehicle for him.
Brumfield, 560 So.2d at 536-537.
The absence of a few of the elements to be considered in evaluating whether a true inventory search was conducted should not necessarily invalidate the search; rather, it is the totality of the circumstances and the true purpose of the inventory that determines the issue. See State v. Cousin, 96-2035, *110 pp. 5-6 (La.App. 1st Cir.9/23/97), 700 So.2d 1016, 1019, writ denied, 97-2809 (La.3/13/98), 712 So.2d 875; see also Brumfield, 560 So.2d at 537. At the motion to suppress hearing, the State had the burden of establishing the admissibility of the evidence seized without a warrant. La.C.Cr.P. art. 703(D).
Contrary to the State's assertions on appeal, the search at issue cannot be justified as a search incident to the defendant's arrest. The search incident to an arrest exception to the warrant requirement allows a search of the person arrested, as well as the immediate area within his control. See Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). When the individual arrested is the occupant of a vehicle, the exception also allows a search of the entire passenger compartment of the vehicle and any containers found therein. See New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). The exception has not been extended to cover containers locked inside a vehicle's trunk. See State v. Carey, 499 So.2d 283, 286 n. 2 (La.App. 1st Cir.1986). State v. Canezaro, 2007-668 (La.6/1/07), 957 So.2d 136 (per curiam), the case cited by the State in support of its search incident to an arrest argument, involved the search of the passenger compartment of a vehicle, not the vehicle's trunk.
To determine the validity of the search in this case, we must therefore determine if it was a valid inventory search. Our review of the record reveals that there also are problems with justifying the warrantless search as a valid inventory search.
At the hearing on the motion to suppress in this case, Detective Ohler testified that upon arresting the defendant in connection with the arrest warrant, he decided that he would impound the vehicle and proceeded with an inventory search. He testified it was Sheriff's Office protocol to inventory vehicles that were to be impounded. Detective Ohler explained that he never considered leaving the vehicle on the scene (instead of impounding it) because the location, in front of the door of a gas station, "wouldn't have been a good place, or a safe place to leave the vehicle." Detective Ohler later testified that out of consideration for the business, the vehicle would not have been left at the scene. When asked if a tow truck was ever called to remove the vehicle, Detective Ohler indicated he did not remember. He testified, however, that he and Detective Schulkens immediately began the inventory search onsite. Detective Ohler searched the interior of the vehicle, while Detective Schulkens searched the trunk. Inside the trunk, in an opened tool case, Detective Schulkens observed a purple Crown Royal bag. Further examination of the bag revealed the presence of a large amount of suspected crack cocaine. The suspected cocaine was seized and possession with intent to distribute cocaine was added to the defendant's arrest charges. According to Detective Ohler, the defendant's vehicle was never towed. Instead, Detective Ohler personally drove the vehicle to the impound yard after the seizure of the cocaine from the trunk.
The defendant testified that, as he was being placed in the police vehicle in connection with his arrest on the warrant, he specifically requested that Detective Ohler leave his vehicle where it was parked and stated that he would get someone to move the vehicle. Detective Ohler testified that he did not recall the defendant making such a request, but explained, "even if he would have asked me to leave the vehicle there, I would not have left it there."
The facts and circumstances of this case indicate that the "inventory search" of the *111 defendant's vehicle was actually a pretext to search for illegal drugs. Although the officers recorded information about the contents of the vehicle, they made absolutely no attempt to determine whether an inventory search could have been avoided. There is no indication in the record that the vehicle could not have remained safely at the place where it was stopped. The purported "inventory search" was conducted on location immediately upon the defendant's arrest. It is not clear whether a tow truck was called before the search commenced or whether one was ever called at all. There is no evidence that the defendant was asked if he consented to the search, if the vehicle contained valuables or if he would consent to the agency's failure to afford him the protection of an inventory search.
If the defendant could have easily made arrangements for the vehicle other than having it impounded, or if he had been willing to waive his rights against the law enforcement agency for failure to guard against loss of his valuables, a justification for the inventory search would not have existed. See Killcrease, 379 So.2d at 739. Because the officers failed to make efforts to determine whether the impoundment of the vehicle could have been avoided, it is clear that the motivation for the search was not to protect the defendant's loss of property or to protect the agency against a claim for failure to guard against such a loss. In this case, the conduct of the police indicates that the officers did not conduct a true inventory search of the defendant's car. Instead, under pretext of an inventory, the officers set out on a warrantless search of the vehicle without probable cause. Thus, the State has not borne its heavy burden of proving there legitimately existed, in this instance, an inventory search exception to the warrant requirement. See Carey, 499 So.2d at 288.
The warrantless search in this case was unreasonable and violated the constitutional guarantees against unreasonable searches and seizures. Thus, the trial court erred in failing to grant the defendant's motion to suppress the cocaine seized from the trunk of his car.
This assignment of error has merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER TWO CONSOLIDATION OF THE OFFENSES
In his second assignment of error, the defendant argues the trial court erred in granting the State's request to consolidate the bills of information for trial over his objection. The defendant argues that his ability to defend against the charges was confounded by the consolidation of the offenses. He also argues, in his pro se brief, that both he and his counsel were unfairly taken by surprise by the consolidation of the offenses. The defendant further argues that consolidation of the offenses (both involving drug dealing) allowed the jury to infer criminal disposition and led to his convictions based upon insufficient evidence. In response, the State argues that the defendant, in his brief, merely speculates about prejudice and fails to make the clear showing of prejudice required to reverse the trial court's ruling.
Louisiana Code of Criminal Procedure article 706 provides:
Upon motion of a defendant, or of all defendants if there are more than one, the court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment. The procedure thereafter shall be the same as if the prosecution were under a single indictment.
*112 The prohibition against misjoinder of offenses and improper consolidation of offenses for trial is grounded on the possible prejudice arising from a single trial on two or more offenses. The defects are not jurisdictional nor do they constitute a denial of due process. Improper consolidation of offenses for trial may be waived by the failure to object. La.Code Crim. P. art. 495; State v. Mallett, 357 So.2d 1105, 1109 (La.1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1979).
The record before us reflects that, on the day of trial, after being informed of the State's intent to consolidate the offenses, the defendant entered an objection.[2] The trial court ordered the matters consolidated over the defendant's objection. In overruling the objection, the court reasoned, "[t]he District Attorney has a lot of discretion in how he tries the case. He has the right to do what he has requested, so the Court's going to overrule your objection." As previously noted, La. C.Cr.P. art. 706 does not provide for the consolidation of separate indictments for trial without consent of the affected defendant(s). Because it is clear that the defendant did not consent, the offenses should not have been consolidated. Thus, we find the trial court erred in ordering the consolidation in this case.
However, our inquiry does not stop here. In State v. Crochet, XXXX-XXXX (La.App. 1st Cir.12/17/04), 897 So.2d 731, writ granted, XXXX-XXXX (La.4/29/05), 901 So.2d 1044, this court, applying a harmless error analysis, found reversible error in the consolidation of offenses over the defendant's objection. In Crochet, the State consolidated one bill of information and two indictments for trial, over the defendant's objection. On appeal, this court reversed, finding the improper consolidation was not harmless. Crochet, XXXX-XXXX at p. 7, 897 So.2d at 736. Upon review, the Supreme Court reversed this court's decision, finding the defendant was not prejudiced by the consolidation. State v. Crochet, XXXX-XXXX, pp. 8-10 (La.6/23/06), 931 So.2d 1083, 1088-89 (per curiam). The Supreme Court noted that, for purposes of appellate review, whether the claim involves misjoinder of offenses, prejudicial joinder, or improper consolidation, the defendant must show prejudice to establish that trial of two or more crimes in a single proceeding "affect[ed] his substantial rights." Crochet, XXXX-XXXX at p. 6, 931 So.2d at 1086 (quoting La.Code Crim. P. art. 921). The same considerations used by the trial court in determining whether prejudice may result from joinder can also be used to determine whether prejudice results from consolidation. Those considerations include
whether the jury would be confused by the various charges; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
Crochet, XXXX-XXXX at p. 6, 931 So.2d at 1087 (quoting State v. Washington, 386 So.2d 1368, 1371 (La.1980)).
Applying the five factors enumerated above, the Supreme Court noted that the facts of each incident were simple and *113 easily distinguishable from each other; the evidence against the defendant, which consisted of the victims' testimony, was not complex and was presented in an orderly fashion, allowing the jury to segregate the charges and the evidence; the defense was not stymied by the consolidation of the offenses; and consolidation of the cases did not expose the jury to evidence that was admissible to one or more of the counts but inadmissible as to other counts. Crochet, XXXX-XXXX at p. 7, 931 So.2d at 1087.
The instant case is factually distinguishable from Crochet. The defendant in Crochet was charged by bill of information with one count of molestation of a juvenile (his daughter). The defendant was also indicted by a grand jury for five counts of aggravated incest of his son and one count of aggravated rape of his son. In finding the improper consolidation of these offenses to be harmless, the Supreme Court specifically noted that the consolidation did not result in the jury being exposed to any inadmissible evidence since the evidence of the defendant's sexual abuse of his biological and stepchildren was admissible to show his "lustful disposition toward children." Crochet, XXXX-XXXX at pp. 7-8, 931 So.2d at 1087 (citing State v. Kennedy, XXXX-XXXX, pp. 6-7 (La.4/3/01), 803 So.2d 916, 921 and State v. Acliese, 403 So.2d 665 (La.1981)); see also La C.E. art. 412.2. In addition, evidence of the defendant's crimes against his biological son was admissible to show his lustful disposition towards that victim. Id.
Application of the aforementioned prejudice factors in the instant case leads to a finding that the improper consolidation of these two offenses was not harmless. While it is unlikely that the jury would have been confused and unable to segregate the various charges and evidence and since the charges and evidence pertinent to each of the offenses were easily distinguishable, the consolidation of the offenses resulted in the jury being exposed to inadmissible other crimes evidence. Because the defendant completely denied distributing and/or possessing cocaine, and thus, his identity, intent and/or guilty knowledge were not at issue, evidence of other drug offenses was inadmissible. See State v. Lockett, 99-0917, pp. 5-7 (La.App. 1st Cir.2/18/00), 754 So.2d 1128, 1131-1132, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 115.
The record reflects that resolution of the distribution charge depended upon the jury making a credibility determination between the police officer and the defendant. The possession with intent to distribute charge likewise required a determination of the defendant's credibility since the defendant claimed he was unaware of the presence of the narcotics in his vehicle. Even considering the trial court's instruction that the offenses should be decided separately, the prejudice to the defendant's credibility by the introduction of the other crack cocaine incident cannot be ignored. It certainly cannot be ruled out that the jury rejected the defenses to the charges because they decided that the defendant was a drug dealer based upon his recent commission of another drug offense.
Considering the foregoing, we conclude that the improper consolidation of these offenses resulted in unfair prejudice to the defendant. The improper consolidation and resulting introduction of inadmissible other crimes evidence presented an opportunity for the jury to infer a criminal disposition. Although the verdict could possibly have been the same on each offense if tried separately, we simply cannot conclude that the jury's guilty verdicts were surely unattributable to the consolidation error.
This assignment of error has merit.

*114 COUNSELED ASSIGNMENT OF ERROR NUMBER THREE IDENTITY OF CONFIDENTIAL INFORMANT
Having found reversible error, we normally would pretermit consideration of all remaining assignments of error. However, because there is a high probability that the issue raised in the defendant's counseled assignment of error number three will arise again on remand, we will consider this issue now.[3]
In this assignment of error, the defendant contends the trial court erred in denying his motion to reveal the identity of the confidential informant.
A confidential informant's identity is privileged, absent "exceptional circumstances." However, the privilege is not absolute. State v. Broadway, 96-2659, p. 19 (La. 10/19/99), 753 So.2d 801, 815, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). Courts use a balancing test for determining when the confidential informant's name must be revealed to the defense. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628-29, 1 L.Ed.2d 639 (1957). Under this test, the public interest in protecting the flow of information must be balanced against the individual's right to prepare his or her defense. Broadway, 96-2659 at p. 19, 753 So.2d at 815. A trial court has great discretion in deciding whether disclosure is warranted. State v. Davis, 411 So.2d 434, 437 (La. 1982).
The privilege has been codified in La. C.E. art. 514. The State has a "privilege to refuse to disclose . . . the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law." La. C.E. art. 514(A). The privilege is not recognized if "[t]he party seeking to overcome the privilege clearly demonstrates that the interest of the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer's testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence." La. C.E. art. 514(C)(3).
When an accused shows that disclosure of the informant's identity is essential for his or her defense, the identity must be revealed. However, the burden rests with the accused to set forth concrete reasons why the identity of the informant is crucial to the defense. Broadway, 96-2659 at pp. 19-20, 753 So.2d at 815. The accused "must convince the court that the informant may be able to give testimony which is necessary to a fair determination of the issue of guilt or innocence." Broadway, 96-2659 at p. 20, 753 So.2d at 815 (quoting Davis, 411 So.2d at 437). When an informant has played a crucial role in the criminal transaction and when his or her testimony is necessary to insure a fair trial, disclosure of the identity should be ordered. Broadway, 96-2659 at p. 20, 753 So.2d at 815.
When the State's case shows the informer participated in the crime, courts have implied that this factor is sufficient to establish "exceptional circumstances," and the informer's identity should be disclosed to the defendant. In such cases, the informer does more than furnish a tip that enables the police to make an arrest. While working with the police, he takes part in the illegal transaction itself. See *115 State v. Dotson, 260 La. 471, 505-506, 256 So.2d 594, 606 (1971) (on rehearing), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972); State v. Thornton, 94-1470, pp. 4-5 (La.App. 1st Cir.10/6/95), 671 So.2d 481, 484.
The record in this case clearly reflects that the confidential informant did not participate in the drug transaction. The informant's role in the matter was limited to arranging the meeting between the defendant and Detective Ohler. Furthermore, because the defendant's defense was that he did not transfer drugs to Detective Ohler, it is unlikely that the informant could give any testimony that is necessary to a fair determination of the defendant's guilt or innocence. The video of the encounter reflects that the confidential informant was at all times seated in the passenger seat of the vehicle facing forward. As previously noted, the greeting and transfer took place away from the passenger side of the vehicle. Thus, it is impossible for the informant to have viewed the greeting and/or transfer. The trial court did not err in denying the motion to reveal the informant's identity. This assignment of error lacks merit.
For the foregoing reasons, the defendant's convictions and habitual offender adjudication are reversed. The sentences are vacated, and the matter is remanded to the district court for new trials. Also, the trial court's ruling denying the defendant's motion to suppress evidence found in the defendant's vehicle during the alleged inventory search is reversed.
CONVICTIONS AND HABITUAL OFFENDER ADJUDICATION VACATED, SENTENCES VACATED AND REMANDED TO DISTRICT COURT FOR NEW TRIALS. RULING DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FOUND DURING THE ALLEGED INVENTORY SEARCH REVERSED.
NOTES
[1] The defendant was jointly charged with codefendant, Kari Ann Nasiatka, in bill number 413835. This bill also charged the defendant with a second count, possession of a Schedule IV controlled dangerous substance, Alprazolam, which was initially severed from the instant offenses and later nol proseds as to the defendant.
[2] In connection with bill of information number 413835, the State also moved to sever the charges against codefendant, Kari Nasiatka.
[3] We pretermit consideration of the remaining assignments of error.