STATE OF LOUISIANA
v.
RODERICK L. GRIFFIN
No. 2009 KA 0721
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
WALTER P. REED, District Attorney, KATHRYN W. LANDRY, Special Appeals Counsel, Attorneys for State of Louisiana
HOLLI HERRLE-CASTILLO, Attorney for Defendant-Appellant Roderick L. Griffin
Before: CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
The defendant, Roderick L. Griffin, was charged by bill of information with distribution of cocaine, a violation of La. R.S. 40:967(A)(1).[1] He pled not guilty and, following a jury trial, was found guilty as charged. The defendant was sentenced to fifteen years at hard labor with the first two years of the sentence to be served without the benefit of parole, probation, or suspension of sentence. The defendant was subsequently adjudicated a third-felony habitual offender. The trial court vacated the defendant's fifteen-year sentence and sentenced the defendant to thirty years at hard labor with the first two years of the sentence to be served without the benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating three assignments of error. We affirm the conviction, habitual offender adjudication, and sentence.

FACTS
On April 19, 2006, Detective Fred Ohler, with the Slidell Police Department, was an agent on the parish-wide Narcotics Task Force. A confidential informant advised Detective Ohler that the defendant, also known as "Slim," was selling crack cocaine in St. Tammany Parish. The confidential informant arranged a meeting between Detective Ohler and the defendant.
Detective Ohler met the defendant at the Country Club Trailer Park in Slidell. They exited their vehicles, and the defendant introduced himself as "Slim." They shook hands. During the handshake, the defendant handed Detective Ohler a cellophane bag with 2.86 grams of crack cocaine in it. Detective Ohler asked what the price was, and the defendant told him it was $200. Detective Ohler told the defendant he had only $160. The defendant took the money. They agreed that Detective Ohler could pay the difference later. At trial. Detective Ohler identified the defendant in court as the person who sold him crack cocaine on April 19, 2006.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the trial court erred in denying his requests for a mistrial. Specifically, the defendant contends the trial court should have granted his requests for mistrial because a State's witness made references to inadmissible other crimes evidence. The defendant also contends the trial court failed to admonish the jury.
The exchanges at issue occurred during the State's direct examination of Detective Keith Dowling with the St. Tammany Parish Sheriffs Office. Earlier in the trial. Detective Ohler had testified that Detective Dowling had informed him of the identity of the defendant. Later, when Detective Dowling took the stand, the prosecutor questioned him about how he knew the defendant:
Q. How did you come into contact with Roderick Griffin? Was that in a professional capacity?
A. Yes, sir.
Q. And tell us how you came into contact with him.
A. On that date. Detective Ohler gave me some information that we were going to be purchasing some crack cocaine from a black male known as Slim in a blue Mazda 626, who lives in Country Club Trailer Park, which is in Slidell. When he told me that, I was actually working on an investigation on Mr. Griffin at the time. I received a call 
At this point, defense counsel objected, and a bench conference was held. Defense counsel argued that it "sounds like [Detective Dowling was] about to get into evidence of other acts, and that's clearly not allowed." Defense counsel also asked for a mistrial and stated, "I mean, it's already come out. He's told them that he's working an investigation, and basically what he's telling them is that this guy's a drug dealer." The trial court responded, "No, he isn't." The trial court further explained that there was a proof of evidence jury instruction that should take care of the matter.
Shortly thereafter, the prosecutor questioned Detective Dowling about information he might have provided to Detective Ohler:
Q. Did you provide any other information to Detective Ohler in the way of identifying information prior to the buy going down, automobile information, driver's license information, any photographs?
A. We had a picture of Mr. Griffin, and I had like a printout of his vehicle from the prior investigation.
At this point, a bench conference was held, and the following colloquy took place:
By Mr. Lindner [defense counsel]: I'm just going to have to object to continued reference to his prior investigation. I mean, I would ask for a mistrial because I think that the jury's been tainted, you know. They now have in their head that this guy not only did he do this, but he was doing other things.
By the Court: Well, all he has brought out is an investigation.
By Mr. Lindner: Yeah. But why? The police don't investigate you because you have done nothing, you know. He was committing crimes in a trailer park.
By the Court: Well, he didn't say anything about committing crimes anywhere. Police investigate a lot of stuff. It doesn't mean they're going to get a conviction or anything.
By Mr. Lindner: Please note my objection.
Louisiana Code of Criminal Procedure article 775 provides that a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by La. Code Crim. P. art. 770 or 771. In his brief, the defendant contends his requests for mistrial should have been granted pursuant to Article 770, which provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]
The defendant's reliance on Article 770 is misplaced. This article applies to a remark or comment made by a judge, district attorney, or court official. Detective Dowling, whose testimony is at issue, does not fall into this exclusive list. Furthermore, as noted by the trial court, Detective Dowling made no references about the defendant committing other crimes. He testified only that he had been working on an investigation involving the defendant. Accordingly, Article 770(2) is inapplicable to the instant matter.
A mistrial under the provisions of Article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness or of the prosecutor make it impossible for the defendant to obtain a fair trial. See State v. Miles, 98-2396, p. 4 (La. App. 1 Cir. 6/25/99), 739 So.2d 901, 904, writ denied, 99-2249 (La. 1/28/00), 753 So.2d 231. However, a mistrial is a drastic remedy that should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal without abuse of that discretion. State v. Berry, 95-1610, p. 7 (La. App. 1 Cir. 11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La. 10/10/97), 703 So.2d 603.
We agree with the trial court's denials of defense counsel's requests for a mistrial. Detective Dowling did not testify about any crime committed by the defendant. Moreover, arguably the prosecutor might not have known from his questions that Detective Dowling would respond about a prior investigation of the defendant. A statement is not chargeable to the State solely because it was in direct response to questioning by the prosecutor. While the prosecutor might have more precisely formulated the question that provoked a witness's response, where the remark was not deliberately obtained by the prosecutor to prejudice the rights of defendant, it is not the basis for a mistrial. State v. Pooler, 96-1794, p. 32 (La. App. 1 Cir. 5/9/97), 696 So.2d 22, 45, writ denied, 97-1470 (La. 11/14/97), 703 So.2d 1288. We also note that, while the trial court did not admonish the jury to disregard any remarks about an investigation of the defendant, defense counsel never requested an admonition by the trial court. Article 771 mandates a request for an admonishment. As such, the trial court's failure to instruct the jury to disregard the remarks referring to a prior investigation of the defendant, absent a request, was not, in itself, reversible error. See Pooler, 96-1794 at 38-39, 696 So.2d at 48.
Despite the vague references by Detective Dowling that he knew the defendant from a prior investigation, the defendant did not suffer such substantial prejudice that he was deprived of any reasonable expectation of a fair trial. Accordingly, the trial court did not abuse its discretion in denying the defendant's requests for a mistrial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues the evidence was insufficient to support a guilty verdict. Specifically, the defendant contends that Detective Ohler's testimony was suspect and that there is some discrepancy regarding the chain of custody of the crack cocaine.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
The crime of distribution is the knowing or intentional distribution of a controlled dangerous substance. Distribution is defined as "delivery" or "physical transfer." In addition to delivery, the State must prove the defendant must have known or had guilty knowledge of the controlled dangerous substance when he or she transferred it. The exact identity of the controlled dangerous substance is an essential element of the crime of distribution thereof. State v. Scott, 31,617, p. 5 (La. App. 2 Cir. 2/24/99), 730 So.2d 515, 518. See La. R.S. 40:961(10), (14).
Detective Ohler testified at trial that a confidential informant arranged a drug buy of crack cocaine between him (Ohler) and the defendant. Detective Ohler planned to buy $100 worth of crack cocaine but, on his way to the transaction, he learned the defendant was bringing $200 worth of crack cocaine. He met the defendant at the Country Club Trailer Park in Slidell. They exited their vehicles, and the defendant introduced himself as "Slim." They shook hands. During the handshake, the defendant handed Detective Ohler a cellophane bag with crack cocaine in it. Detective Ohler asked what the price was, and the defendant told him it was $200. Detective Ohler told the defendant he had only $160. The defendant took the money and told him he owed $40 later. Detective Ohler also identified the defendant in court as the person who sold him crack cocaine on April 19, 2006.
The drug transaction was both videotaped and audiotaped. However, much of the audiotaped conversation between Detective Ohler and the defendant is muffled and inaudible. Detective Ohler noted in his testimony that the actual transaction where the defendant handed him the drugs and he handed the defendant the money was not caught on video. Our review of the videotape confirms Detective Ohler's statement regarding the actual transaction. Accordingly, both recordings were of limited evidentiary value, as noted by this court in its original opinion. See Griffin, XXXX-XXXX at 7-8, 984 So.2d at 106. The limited video and poor audio quality of the taped drug transaction notwithstanding, the uncontradicted testimony of an undercover narcotics officer is sufficient to convict a defendant charged with drug distribution. See State v. Brooks, 633 So.2d 659, 665 (La. App. 1 Cir. 1993), writ denied, 94-0308 (La. 5/20/94), 637 So.2d 475. The defendant did not testify, and no witnesses for the defense testified. In rendering its verdict the jury obviously believed Detective Ohler's testimony that he purchased crack cocaine from the defendant. Such testimony was positive evidence the defendant distributed cocaine.
The defendant asserts the testimony of Detective Ohler was implausible and suspect. The defendant points out that Detective Ohler was not sure whether he had to go back to his vehicle to get the money. The defendant also suggests the drug deal, as described by Detective Ohler, made no sense because only "the worst drug dealer in the world" would hand the crack over without receiving payment first and would not allow the buyer to owe him part of the purchase price. The defendant further notes that Detective Ohler signed the original copy of the defendant's photograph on April 19, 2006. However, the photograph of the defendant submitted into evidence was dated April 25, 2006. Detective Ohler testified that he misplaced the original copy, so he printed another copy of the photograph. Finally, the defendant points out that while Detective Ohler signed the affidavit attesting to the identification of the defendant as the drug dealer on April 19, 2006, Sergeant Sharp did not notarize the document until April 25, 2006. Detective Ohler testified that, while Sergeant Sharp watched him sign the affidavit on April 19, he could not explain why Sergeant Sharp did not notarize it until April 25.
Each of these aforementioned issues was brought up at trial and addressed by Detective Ohler in his testimony. Assuming any conflicting accounts, the jury would have made a credibility determination. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.
The defendant also asserts there was a chain of custody discrepancy regarding the movement of the packaged crack cocaine. According to the defendant, there were no measures in place to verify the evidence was secure between the time Detective Ohler retrieved it and the next day when his supervisor approved its submission into the evidence depository. Detective Ohler, Sergeant Harry O'Neal with the St. Tammany Parish Sheriffs Office, and Corporal Scott Wanner with St. Tammany Parish Sheriffs Office, all testified about the chain of custody. The defendant asserts the evidence was allegedly retrieved on April 18, 2006, while Detective Ohler testified the request for narcotics analysis was submitted April 19, 2006. However, all references in the record regarding the purchase date are of April 19, 2006, which is also the date of the offense listed in the bill of information.
The evidence regarding the chain of custody was uncontradicted. Detective Ohler secured the crack cocaine inside a safe at his office. He then completed the necessary forms, removed the cocaine from the safe, packaged it, and put it into the evidence depository. Also, he initialed the tape on the packaging to insure the package was not tampered with. Corporal Wanner, an evidence custodian, testified that he retrieved the evidence from the depository on May 2, 2006, and brought it to the crime lab for testing. After it was tested and brought back to him, it was secured in the downstairs vault. Sergeant O'Neal, a crime lab drug analyst, testified that he received the sealed package from Corporal Wanner. He opened the envelope, performed his testing on the cocaine, and then repackaged the evidence. He resealed the envelope with blue evidence tape and initialed the tape, which indicated he was the last person to seal the evidence. He then returned the evidence to Corporal Wanner, where it was maintained in the property room until the trial.
The chain of custody of the crack cocaine distributed by the defendant was clearly established by the record. There is no evidence to support any theory of tampering with evidence.
The guilty verdict indicates the jury accepted the testimony of the State's witnesses as true and rejected the hypothesis of innocence offered by the defense. It is clear the jury believed the defendant sold Detective Ohler 2.86 grams of crack cocaine for $160. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1 Cir. 1985).
After a thorough review of the record, we find the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of distribution of cocaine.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, the defendant argues his sentence is excessive. Specifically, the defendant contends the facts of this case and his background do not warrant a thirty-year sentence.
A thorough review of the record indicates the defendant did not make a written motion to reconsider his sentence. At the conclusion of the sentencing by the trial court, however, the defendant stated, "And also, Your Honor, I would ask the Court orally for a, since my counsel won't, for a reconsideration of sentence." A general objection to a sentence without stating specific grounds, including excessiveness, preserves nothing for appellate review. See State v. Bickham, 98-1839, p. 6 (La. App. 1 Cir. 6/25/99), 739 So.2d 887, 891. Under La. Code Crim. P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude the defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. The defendant, therefore, is procedurally barred from having this assignment of error reviewed. See State v. Duncan, 94-1563, p. 2 (La. App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam). See also State v. LeBouef, 97-0902, pp. 2-3 (La. App. 1 Cir. 2/20/98), 708 So.2d 808, 808-09, writ denied, 98-0767 (La. 7/2/98), 724 So.2d 206.
This assignment of error is without merit.

REVIEW FOR ERROR
The defendant asks this court to examine the record for error under La. Code Crim. P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under Article 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 2005-2514 (La. App. 1 Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
NOTES
[1] The defendant was originally charged with distribution of cocaine and with possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A)(1). Following trial, he was found guilty as charged. The defendant was sentenced to concurrent terms of fifteen years at hard labor for each conviction. He was adjudicated a third-felony habitual offender and sentenced to thirty years at hard labor. The defendant appealed his convictions and sentences. This court reversed the convictions and habitual offender adjudication, vacated the sentences, and remanded for new trials. We found error in both the consolidation of the offenses and the denial of the motion to suppress the evidence. See State v. Griffin, XXXX-XXXX (La. App. 1 Cir. 2/8/08), 984 So.2d 97. On June 24, 2008, the State proceeded to trial on the distribution of cocaine charge only.